JAMES L. HORNE, ADM'R v. LAYTON F. PUCKETT.

In a suit for a negro, upon the ground that the bill of sale, under which the defendant claimed, though absolute upon its face, was intended by the parties as a mortgage, it is error to instruct the jury, that, if they believe, from the evidence, that at the date of the bill of sale, it was the agreement of the parties, that the defendant should pay $382, for which the negro was then mortgaged; and should also advance other sums for the plaintiff, at a future day; and that the defendant did pay and advance the said sums of money, as agreed to; and that the bill of sale was treated, by the parties, as a conveyance of the said negro absolutely, and not as a mortgage, they should find for the defendant.

On such an issue, the true question to be determined by the jury is, whether, notwithstanding the parties have given to the bill of sale, the form and appearance of an absolute conveyance, such was in fact its substance, as understood between the parties themselves.

And this question should be decided by the jury, upon the evidence, independently of the form of the instrument, or the phase sought to be put upon the transaction, by the representations and admissions of the parties.

APPEAL from McLennan. Tried below before the Hon. N. W. Battle.

Suit by appellant, as administrator of the estate of William Horne, deceased, against the appellee, for the recovery of a certain slave, named Jean or Jim, alleged, in the petition, to be claimed and held by the defendant, under an instrument of writing, or bill of sale, purporting to have been made by the said William Horne, in his lifetime, to the defendant. The plaintiff averred that, if the defendant ever had any legal claim to the said slave, the same accrued by reason of certain claims for money, to a small amount, held by the defendant against said William Horne, during his lifetime, (the justness of which was denied,) to secure the payment whereof, the said defendant prevailed upon the said William Horne, deceased, to execute the aforesaid instrument of writing, or bill of sale, for said slave ; that although it might be absolute on its face, it was intended as a mortgage or lien upon said slave, to secure the payment of the said money ; that the consideration recited in the bill of sale, was not the actual amount or consideration in the said transaction, but far exceeded any amount which Horne ever owed to, or was ever claimed by, the defendant. The petition charged further, that it was agreed between the parties, that, in consideration of some very inconsiderable indebtedness, that might exist between them, the defendant should take a nominal bill of sale from Horne, and hold the same, and the said boy, until such time as Horne could arrange the same, take up the writing, and take back the boy. That Horne, during his lifetime, confided greatly in the integrity of the defendant.

The defendant, in his answer, said that he bought the slave, and

paid for him fifteen hundred dollars, and that he had a good and lawful title to the said boy, and made profert of his bill of sale, which was filed in court. The defendant also pleaded, "not guilty of the matters and things charged in plaintiff's petition."

The bill of sale referred to was in evidence, filed by the defendant, duly executed, and in form was an absolute, unconditional conveyance, by William Horne to L. F. Puckett, of said Jim, with a clause of warranty of title and soundness, dated January 5th, 1857.

Testimony was introduced by the plaintiff, tending to prove that the slave had been, before the date of the bill of sale, mortgaged to one Harris ; that Horne applied to the defendant to aid him in discharging the mortgage ; that he, defendant, promised to pay the sum of three hundred and eighty dollars on that account, and took up the mortgage, as requested ; and that Horne's proposition was, ʳthat the defendant should take the boy, and keep him until he was able to refund the advance made by the defendant ; and also, that the defendant admitted, a short time before, and a short time after he came into possession of the boy, that he held him in pursuance of such an agreement with Horne, as before stated ; and that he had paid to Harris the amount of the mortgage. Also, that the defendant, in the summer of the same year, when the boy ran away, assigned as a reason for not selling him, that Horne was not willing that he should be sold.

There was also testimony offered by the defendant, tending to establish, by the admissions of William Horne, deceased, that he had sold the boy to defendant, and was paid, by the settlement for him, by the defendant, of old debts, judgments, &c. ; also an admission, that he had been paid ten or eleven hundred dollars for the boy ; also other admissions, such as refusing to pay taxes on the boy, stating that he belonged to defendant. It was also proved, by the defendant, that after the date of the bill of sale, he paid, at various times, and to sundry creditors of William Horne, deceased, divers sums of money, at the request of the said Horne, varying in amount, from about

one hundred and fifty dollars, to about the sums of thirty, forty, or fifty dollars, according to the amount of the claim presented, and amounting in the aggregate, to about $670; and that, when some of the claims were presented to himself, he referred the holders of them to the defendant, who was to settle such debts. There was testimony of a circumstantial character, on either side, not necessary to be here stated.

The court charged the jury, in the third instruction given, as follows : "That if the jury believe, from the evidence, that at "the date of said bill of sale, it was the agreement between the "parties thereto, that Puckett should settle with Harris the "debt of $382, which plaintiff's intestate owed, and for the "payment of which he had mortgaged said negro ; and that said "Puckett should advance other sums of money, at a future day, "for plaintiff's intestate ; and, if the jury further believe, from "the evidence, that said Puckett did advance said other sums "of money, according to stipulation, and that said bill of sale "was treated by said parties thereto as a conveyance of said "negro absolutely, and not as a mortgage, they will find for the "defendant."

Verdict and judgment for the defendant.

*S. Black*, for appellant, argued that the court erred, in the third charge given to the jury. The latter clause, "if the "jury find from the testimony, that the parties *treated* the "instrument as a bill of sale, they will find for defendant;" it is submitted, was charging the jury upon the weight of the evidence. It was charging them, that the *treatment* of the instrument was conclusive of their intentions. It was instructing them, in effect, that although, they might, at first, have regarded the instrument merely as a security, yet, if afterwards they *treated* it as a bill of sale, it became such. Certainly this was charging upon the weight of evidence, and was an error, well calculated to mislead the jury.

*Harrison* and *Earle*, for appellee.

WHEELER, CH. J.—The third instruction was framed with a direct reference to the evidence, and there can be little doubt that it had a controlling effect upon the verdict.

The jury must have believed the conclusions of fact submitted in the charge. They could not doubt that Puckett was to settle the debt with Harris, of $382, for which the negro had been mortgaged, and which it was proved that he did settle; nor that Puckett was to advance other sums, which it was proved he did advance; nor that the bill of sale, in the language of the charge, "was treated" by the parties as a conveyance of the negro absolutely, and not as a mortgage; for it was proved that the parties both called it an absolute sale, and represented, or as it is expressed in the charge, "treated" it as such, at and after the making of it. They had given it that form, and they held it out to the public, as being in substance and fact, what it was in form. About this, there could be no doubt or dispute. And the jury were instructed, that if such were the facts, they must find for the defendant. Under this charge, thus applied directly to facts which did not admit of doubt or dispute, the jury could not do otherwise than return the verdict they did. Upon the assumed facts, which were not, and could not be controverted, the effect of the charge in question was, to take from the consideration of the jury, the very question to be decided, whether a mortgage or not, and to decide the case. The question was not, whether the transaction was, on its face, an absolute sale, or whether the parties, in their conduct and representations, so treated it. It could not be disputed, that they did. But the question was, whether, notwithstanding they had given it that form and appearance, such was, in fact, its substance, as understood between the parties themselves; whether it was, in fact, what on its face it purported to be, an absolute sale; and this question was to be decided by the jury, upon the evidence, independently of the form of the instrument, or the phase sought to be put upon the transaction, by representations and admissions of the parties. But the instruction assumed that, if the circumstances were, as indicated, it was not a mort-

gage, but an absolute sale, and the case was decided accordingly. In this, there was error. Those circumstances were not the test by which to resolve the question of a mortgage or not. The law applies a very diffcrent test. (Stamper v. Johnson, 3 Tex. Rep. 1; Luckett v. Townsend, Id. 119; Stephens v. Sherrod, 6 Id. 294.) It looks to the real nature of the transaction, irrespective of the forms under which the parties have sought to cloak and disguise it. And so, it appears, the court understood the law, and sought to express it, in other parts of the charge. And if that part of the charge, which follows this instruction, had been expressed in language equally adapted to the comprehension of a jury, and applied as directly to the evidence, tending to show that the transaction was in fact a mortgage, and not what it purported to be, an absolute sale, it might, perhaps, have been held, that the error in this instruction, was obviated by the other instructions. But in view of the evidence, and the terms in which other portions of the charge are expressed, there can be little doubt, we think, that the instruction in question had a controlling effect upon the finding of the jury. The judgment is therefore erroneous, and must be reversed, and the cause remanded for a new trial.

Reversed and remanded.